UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COREY ANTHONY MERINO, <br> Plaintiff, <br> v. <br> COUNTY OF SANTA CLARA, <br> Defendant. | Case No.18-cv-02899-VKD <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 32 |

Plaintiff Corey Merino filed this action against the County of Santa Clara Board of Supervisors ("the County") and Does 1-50.[1] Dkt. No. 32. Specifically, Mr. Merino asserts claims 1 and 2 for violations of his Eighth Amendment[2] rights pursuant to 42 U.S.C. § 1983 against both the County and the Doe defendants for failure to protect him while he was in custody and for deliberate indifference to his serious medical needs. *Id.* ¶¶ 34-53. He also asserts claims 3 and 4, respectively, for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against the County only. *Id.* ¶¶ 54-76.

---

[1] Mr. Merino and the County have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 18. However, none of the Doe defendants has been identified, and none has appeared or consented to magistrate judge jurisdiction.

[2] The operative complaint alleges a violation of Mr. Merino's Eighth Amendment rights. Dkt. No. 31 ¶ 5. However, the parties agree that Mr. Merino was a pretrial detainee during the events pled in the operative complaint. Dkt. No. 32 at 4; Dkt. No. 33 at 3. Mr. Merino's suit as a pretrial detainee therefore implicates his Fourteenth Amendment due process rights rather than his Eighth Amendment right to be free of cruel and unusual punishment. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The same standards apply to pretrial detainees alleging violation of their Fourteenth Amendment rights as inmates alleging violation of their Eighth Amendment rights. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The County filed a motion to dismiss all claims in Mr. Merino's Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and all claims against the Doe defendants on the basis that the use of Doe defendants in federal court is improper. Dkt. No. 32. The Court heard oral argument on the County's motion on March 12, 2019. Dkt. No. 35.

Having considered the parties' moving papers and arguments made at the hearing, the Court denies the County's motion to dismiss.

## I.  BACKGROUND[3]

Mr. Merino is a resident of Santa Clara County. Dkt. No. 31 ¶ 1. Since at least 2005, Mr. Merino has suffered from herniated discs in his lower back, a condition that causes him substantial pain, interferes with his ability to sleep, perform manual tasks, and work. *Id.* ¶ 10. He requires daily prescription narcotic pain medication (oxycodone) and specialized shoes or shoe inserts to aid his functional movement and stability. *Id.*.

The County operates and manages the Santa Clara County Main Jail Complex ("Main Jail") and the Elmwood Men's Correctional Complex ("Elmwood"). *Id.* ¶ 2. The Doe defendants are guards, detectives, employees, agents, servants, medical staff, and/or contractors of the County. *Id.* ¶ 4.

In May 2017, Mr. Merino was booked into the Main Jail and thereafter transferred to Elmwood as a pretrial detainee. *Id.* ¶ 11; *see also* Dkt. No. 33 at 3. During his intake medical interview, Mr. Merino informed the Doe defendants about his medical condition and his need for prescription pain medication and special shoes or shoe inserts. Dkt. No. 31 ¶ 12. Instead of contacting Mr. Merino's physician or consulting his medical records, the Doe defendants told Mr. Merino that he would only receive ibuprofen. *Id.* ¶¶ 12-13. Mr. Merino requested accommodations in the form of a lower bunk and special shoes, but the Doe defendants refused to supply them. *Id.* ¶ 14. Because the Doe defendants did not provide Mr. Merino with the

---

[3] Unless otherwise noted, the following factual allegations are taken from the SAC, and they are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

requested shoes, he was unable to maintain his stability and fell, injuring his shoulder. *Id.* ¶ 15. Even after his injury, the Doe defendants continued to refuse to provide Mr. Merino with a lower bunk or special shoes. *Id.* ¶¶ 16-17.

While at Elmwood, members of the Norteño gang sexually harassed Mr. Merino. *Id.* ¶¶ 19-20. He reported the harassment but declined to pursue a claim under the Prison Rape Elimination Act, in part because he was concerned about future retaliation from the gang. *Id.* ¶ 20. Mr. Merino was subsequently moved to another housing unit, which also housed Norteño gang members. *Id.* ¶ 21. Immediately upon his arrival in the new housing unit, Norteño gang members approached Mr. Merino and demanded to know his gang affiliations. *Id.* ¶ 22. Mr. Merino responded that he was not affiliated with any gangs. *Id.* The Norteño gang members then attempted to move Mr. Merino to the courtyard to conduct a body inspection for gang tattoos, but he resisted moving and instead lifted his shirt to show that he had no tattoos. *Id.* The Norteño gang members then attacked Mr. Merino, beating him so severely that he had to be transported to an outside medical facility for emergency treatment. *Id.* ¶¶ 22, 25. Despite the prison guards' unobstructed view of the attack on Mr. Merino, none of the Doe defendant guards came to Mr. Merino's aid until after he had been severely injured. *Id.* ¶ 23. Mr. Merino says that the Doe defendants did not issue any verbal commands for the attackers to disperse, nor did they employ any kind of deterrent countermeasure to halt the assault on Mr. Merino, such as the use of pepper spray. *Id.*

Mr. Merino's assailants broke his face in several places. *Id.* As a result of his injuries, Mr. Merino's vision was impaired. *Id.* ¶ 26. Mr. Merino says that defendants failed to provide him with necessary follow-up treatment with an ophthalmologist, causing his vision to become permanently impaired. *Id.* Mr. Merino now requires a specialty lens prescription to correct his vision, which he cannot afford. *Id.*

Mr. Merino's injuries also required him to have a plate installed in his face and his jaw wired shut for two to three weeks after the attack. *Id.* ¶ 27. Mr. Merino suffered severe pain during this period, and the medication defendants provided was insufficient to treat his pain. *Id.* ¶ 28. Because Mr. Merino's jaw was wired shut, his physician ordered him to follow an exclusively

1  liquid food diet. *Id.* ¶ 29. However, defendants sometimes provided him only pureed or solid
2  foods that he could not eat. *Id.* Mr. Merino informed defendants that he could only consume
3  liquid food per his doctor's orders, but he says they ignored his requests. *Id.*

4　　　　When the wiring was removed from Mr. Merino's jaw, dental hardware remained installed
5  on both sides of his jaw, restricting his jaw movement. *Id.* ¶ 30. Mr. Merino's oral surgeon
6  encouraged him to begin consuming solid foods to aid in the healing process, emphasizing that the
7  transition from liquid to solid food should be gradual, and that if he experienced any pain, he
8  should return to the liquid diet. *Id.* Defendants immediately placed Mr. Merino on a completely
9  solid diet, which he was unable to eat. *Id.*

10　　　　Mr. Merino also says that defendants also did not permit him to see his oral surgeon for
11  follow-up care in a timely manner, despite his submission of 15 inmate requests, four inmate
12  grievances, and appeals of two grievances—all related to requests to see his surgeon. *Id.* ¶¶ 30-31.
13  As a result, the dental hardware remained in Mr. Merino's mouth for two to three weeks longer
14  than medically necessary, causing Mr. Merino to suffer oral lacerations and sores. *Id.* ¶ 31.
15  Because he was unable to eat solid food properly while the dental hardware remained in his
16  mouth, Mr. Merino lost 25-30 pounds. *Id.* ¶ 32. Mr. Merino left Elmwood in November 2017.
17  *Id.* ¶ 1.

18　　　　Mr. Merino filed this action pro se on May 17, 2018. Dkt. No. 1. On November 27, 2018,
19  the Court appointed pro bono counsel for the limited purpose of addressing the County's then-
20  pending motion to dismiss Mr. Merino's first amended complaint, amending the complaint, and
21  alternative dispute resolution. Dkt. No. 25. Pursuant to a stipulation between the parties, the
22  County withdrew its motion to dismiss the first amended complaint, and Mr. Merino filed his SAC
23  on December 21, 2018. Dkt. Nos. 29, 31. The County then filed its motion to dismiss the SAC
24  now before the Court. Dkt. No. 32.

25  **II.   LEGAL STANDARD**

26　　　　"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a
27  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*
28  *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While leave to amend generally is granted liberally, the Court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)).

## III. DISCUSSION

### A. Claims 1 and 2: Violation of Section 1983 Against All Defendants

#### 1. Claim 1: Failure to Protect

##### a. Doe Defendants

The County argues that Mr. Merino has not stated a claim for failure to protect against the Doe defendants because he does not identify any specific individual defendant or a facially unconstitutional County policy, practice, or custom, and because the SAC only alleges liability based on *respondeat superior*. Dkt. No. 32 at 7–8. To state a claim for relief against an individual defendant, Mr. Merino must plead facts showing that (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measure to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

5

Here, Mr. Merino alleges that the Doe defendants intentionally chose to house him with Norteño gang members after he had already been harassed by other members of the same gang, and intentionally chose not to intervene in the gang members' attack on him. Dkt. No. 31 ¶¶ 24, 38-41. Mr. Merino alleges that the Doe defendants were aware of gangs within their facilities, knew of gang practices and in particular of violence against unaffiliated prisoners, and knew how to intervene in assaults like the one he suffered and how to protect prisoners from harm. *Id.* ¶¶ 23-24, 39-41. Additionally, Mr. Merino alleges that the Doe defendants did not take reasonable measures to protect him from attack, such as issuing verbal warnings to his attackers or employing pepper spray to disperse them. *Id.* ¶¶ 23, 41. Finally, he alleges that, as a result of the Doe defendants' misconduct, he suffered severe physical injuries. *Id.* ¶¶ 21-28, 43.

While the County is correct that Mr. Merino does not identify any individual defendant by name, as discussed below *infra* Section III.C, this information is not presently known to Mr. Merino, although he has described individual defendants according to the functions they performed. *See, e.g.*, Dkt. No. 31 ¶¶ 12, 16, 23 (describing Doe defendant conducting medical interview, Doe defendant conducting medical exam and denying request for special shoes and lower bunk, and Doe defendants observing M8A pod at the time of the attack on Mr. Merino).

The Court finds that the allegations of the SAC are sufficient to state a claim against the Doe defendants for failure to protect Mr. Merino.

### b. The County

The County argues that Mr. Merino's failure to protect claim against it should be dismissed because Mr. Merino failed to adequately allege that the constitutional violation was the result of a county policy, practice, or custom. Dkt. No. 32 at 6–9. To state a claim for relief against a government entity, Mr. Merino must plead facts showing that a "person" acting under color of state law proximately caused a violation of his constitutional or other federal rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A "person" can be a municipality, county, or other local government unit. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2015) ("[W]hen a California sheriff's department performs the function of conducting criminal investigations, it is a county actor subject to suit under §

1983."), *cert. denied*, 135 S. Ct. 980 (2015). A local government unit cannot be held responsible for the actions of its employees under a *respondeat superior* theory of liability. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). Therefore, a plaintiff must demonstrate that the alleged constitutional violation was the result of a policy or custom of that local government unit. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local government under section 1983, the plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167–68 (9th Cir. 2014) (same). That policy or custom must "reflect[] deliberate indifference to the constitutional rights of its inhabitants." *Castro*, 833 F.3d at 1073 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)) (internal quotation marks omitted).

Mr. Merino alleges that the County "has a policy and practice of not ensuring inmates are housed in areas where they will be safe from gang violence, and a policy and practice of failing to supervise prison pods to prevent physical violence among inmates," and that those policies and practices resulted in the attack on Mr. Merino. Dkt. No. 31 ¶ 42. The County moves to dismiss this claim on two grounds. First, the County argues its housing decision for Mr. Merino was correct because (1) lack of gang-affiliation is not a known risk factor, and (2) the County could not take into account Mr. Merino's race or ethnicity in deciding where to house him without violating constitutional protections against race-based discrimination. Dkt. No. 32 at 4–5 (citing *Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019) and *Johnson v. California*, 543 U.S. 499 (2005)). The County further contends that the SAC only generally alleges that the County has "a policy and practice of not ensuring inmates are housed in areas where they will be safe from gang violence, and a policy and practice of failing to supervise prison pods to prevent physical violence among inmates," and that Mr. Merino pleads no facts to support this allegation. *Id.* at 7 (citing Dkt. No. 31 ¶ 42).

Citing *Castro*, Mr. Merino responds that a custom or practice of placing prisoners in an unsafe environment without proper monitoring is an actionable constitutional violation by the County. Dkt. No. 33 at 6. In *Castro*, the Ninth Circuit affirmed a jury verdict finding the County

7

of Los Angeles and the Los Angeles Sheriff's Department liable for violating the plaintiff's Fourteenth Amendment right to be protected from harm at the hands of other inmates based on a custom of housing intoxicated inmates in sobering cells with inadequate audio monitoring and a policy of checking on inmates only every 30 minutes. 833 F.3d at 1073–78. Here, Mr. Merino alleges that the County employs a gang task force and is aware of common gang practices, such as targeting inmates to determine their gang affiliations, checking for tattoos, and attacking those not in the same gang. Dkt. No. 31 ¶¶ 24, 42. He also alleges that the dormitory in which he was placed gives guards an unobstructed view into the dormitory, and at least three prison guards monitor the dormitory at all times. *Id.* ¶ 21. Despite the unobstructed view, the Doe defendants did nothing to stop the attack. *Id.* ¶ 23. Mr. Merino argues that the Court may infer from these allegations a policy or practice by the County regarding how his dormitory was monitored by guards and may also infer a policy or practice by the County of not taking appropriate steps to prevent gang-related violence against other prisoners.

While the SAC's allegations could certainly be more fulsome, the Court agrees with Mr. Merino that his allegations go beyond mere conclusory assertions. Moreover, Mr. Merino adequately alleges that these policies, practices, or customs—however weakly characterized— resulted in his injuries. As the Ninth Circuit observed in *Castro*, "Had the entity defendants provided consistent monitoring, or had the entity defendants required Castro and his attacker to be housed in different locations, which were available, Gonzalez'[s] attack on Castro could have been averted." *Castro*, 833 F.3d at 1075. Likewise, Mr. Merino adequately alleges that if the County had housed Mr. Merino in a different location without Norteño gang members, and if the County had required proper monitoring, he would not have been attacked—or at least he would not have suffered such severe injuries.

Mr. Merino also points out that he alleges that he should have been housed differently based on his lack of gang affiliation, not based on his race—although his race put him at greater risk of harm from the Norteño gang, which is comprised primarily of Hispanic males. Dkt. No. 33 at 8–11; *see also* Dkt. No. 31 ¶ 19 ("When an inmate enters a new dormitory, it is common for the gang affiliated with an inmate's race to approach an inmate to inspect his body for tattoos to

8

discern if the inmate is gang affiliated. Inmates with no gang affiliation are not protected and are vulnerable to assault."). Mr. Merino observes that the authority on which the County relies expressly acknowledges that "the necessities of prison security and discipline" qualify as compelling government interests that justify narrowly tailored racial classifications. *Johnson*, 543 U.S. at 513 (internal quotation marks omitted).

The question of whether the County could or did take into consideration Mr. Merino's race when determining where to house him concerns the merits of Mr. Merino's claims and questions of fact that the Court cannot address at the pleading stage. Not surprisingly, the authority on which the County relies concerns challenges involving the use of race-based classification in correctional facilities on summary judgment, not at the pleading stage. *Labatad v. Corrections Corp. of Am.*, 714 F.3d 1155 (9th Cir. 2013); *Mayoral v. Sheahan*, 245 F.3d 930 (7th Cir. 2001). The Court is satisfied that the County is on notice of Mr. Merino's theory of liability: i.e., that the County violated his Fourteenth Amendment rights by failing to protect him while he was in its facility because it housed him with Norteño gang members even though Mr. Merino was not a member of that gang and other Norteño gang members had previously harassed him. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk [to inmate health or safety] is a question of fact . . . ."); *Twombly*, 550 U.S. at 585 ("Rule 8(a)(2) does not contemplate a court's passing on the merits of a litigant's claim at the pleading stage.").

Accordingly, the Court denies the County's motion to dismiss Mr. Merino's failure to protect claim against either the Doe defendants or the County.

### 2. Claim 2: Deliberate Indifference to Serious Medical Need Against All Defendants

#### a. Doe Defendants

The County argues that Mr. Merino has failed to state a claim for deliberate indifference to a serious medical need against the Doe defendants. Dkt. No. 32 at 10. The elements of a pretrial detainee's medical care claim against an individual defendant under the Fourteenth Amendment due process clause are similar to the elements of a failure to protect claim. *Gordon v. Cty. of*

9

*Orange*, 888 F.3d 1118, 124–25 (9th Cir. 2018) (applying *Castro* to medical care claim); *see also Castro*, 833 F.3d at 1067 (noting that "the due process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner'") (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The same standards apply to pretrial detainees alleging violation of their Fourteenth Amendment rights as inmates alleging violation of their Eighth Amendment rights. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

To properly state a claim under the Eighth/Fourteenth Amendment and 42 U.S.C. § 1983, Mr. Merino must plead that prison officials acting under the color of state law were deliberately indifferent to his serious medical needs. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A plaintiff demonstrates a "serious medical need" by showing that failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain. *Id.* (internal quotation marks omitted). A plaintiff demonstrates "deliberate indifference" by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). A plaintiff must "prove more than negligence, but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071) (internal quotation marks omitted).

### i. Serious medical need

"The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). The County does not appear to dispute that Mr. Merino suffered from a serious medical need. With respect to his preexisting back problems, he was in chronic substantial pain, and his mobility was impaired. Dkt. No. 31 ¶ 10; *cf. Ivory v. Miranda*,

1  No. 2:12-cv-2902 ACP, 2014 WL 172635, at *4 (E.D. Cal. Jan. 15, 2014) ("Because plaintiff alleges . . . mobility impairment . . . and chronic and substantial pain, his knee condition plainly constitutes a serious medical need."). Mr. Merino's injuries from the attack also constitute a serious medical need, given that his injuries required emergency medical attention, hours-long surgery, and follow-up treatment for weeks afterward. Dkt. No. 31 ¶¶ 25-31.

### ii. Deliberate indifference

The County acknowledges that Mr. Merino pleads that the Doe defendants failed to provide him the proper diet for his medical needs, failed to take him to his follow-up medical appointments, failed to act on his written requests to remove the dental hardware, and failed to provide him with sufficient pain medication, special shoes, and a lower bunk for his back problems. Dkt. No. 32 at 10. However, the County contends that these allegations show that Mr. Merino received some treatment for which there was a medical need[4] and that he merely disagrees with the treatment he received, which is insufficient for a deliberate indifference claim. But Mr. Merino says he received no treatment at all in some respects, including, for example, the failure to take him to follow-up medical appointments. Dkt. No. 32 ¶¶ 30-31. Mr. Merino also pleads that he informed the County of his doctor's orders regarding diet, but he nevertheless did not receive the proper diet. *Id.* ¶¶ 29-30.

The Court is satisfied that Mr. Merino has stated a claim for deliberate indifference against the Doe defendants. Mr. Merino alleges that the Doe defendants denied or delayed medical care, and as a result, he suffered harm. Mr. Merino says he was in constant pain because he did not receive adequate pain medication; he fell and injured his shoulder because he did not receive the special shoes; his vision is now permanently impaired because they did not provide him follow-up vision treatment; he suffered weight loss because he could not eat what was provided; and he suffered from sores and lacerations in his mouth from the dental hardware because they did not take him to the oral surgeon for follow-up treatment. *Id*. ¶¶ 12-17, 28-32. Whether the alleged

---

[4] The County's moving papers refer to documents attached to the original complaint. Dkt. No. 32 at 10. Those documents are not attached to the SAC, which is the operative complaint, and the County did not request that the Court take judicial notice of them. The Court therefore does not consider them.

11

acts rise beyond negligence or malpractice to the level of deliberate indifference is a question of fact that the Court cannot resolve at the pleading stage. *See Farmer*, 511 U.S. at 842.

### a. The County

The County also argues that Mr. Merino has failed to state a claim for deliberate indifference to a serious medical need against the County itself. Dkt. No. 32 at 11. A deliberate indifference claim against a government entity such as the County must comply with a similar standard as Mr. Merino's failure to protect claim against the County. *See Gordon*, 888 F.3d at 1124–25; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Monell*, 436 U.S. 658). A detainee must (1) show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, 833 F.3d at 1075–76. The deliberate indifference standard for municipalities is an objective standard. *Id.* at 1076. "This *Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Mendiola-Martinez*, 836 F.3d at 1248–49 (quoting *Castro*, 833 F.3d at 1076) (alteration in original).

The County contends that Mr. Merino has failed to state a claim for deliberate indifference against it, arguing that he does not plead any facts showing that the Doe defendants' actions were the result of an alleged practice or policy. Dkt. No. 32 at 11. The Court disagrees. The SAC first pleads that, during the intake process and prior to any medical examination, a Doe defendant informed Mr. Merino that he would not receive any pain medication beyond ibuprofen—an expression of the County's policy, practice, or custom. Dkt. No. 31 ¶ 12. In fact, Mr. Merino says that he never received any prescription pain medication for his back problems. *Id.* ¶ 13. He also says that after the attack, he received only ibuprofen and a low dosage of prescription pain medication, which were insufficient for his medical needs. *Id.* ¶ 28. Accepting these allegations are true and construing them in Mr. Merino's favor, the Court finds that Mr. Merino has adequately pled a policy, practice, or custom for which the County may be held liable for

12

deliberate indifference to Mr. Merino's serious medical needs. *See Reese*, 643 F.3d at 690; *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014) (holding that a blanket, categorical denial of medically indicated treatment solely on the basis of an administrative policy constitutes deliberate indifference of a serious medical need).

Additionally, with respect to the events following the attack, Mr. Merino alleges that the County has a policy or practice of not ensuring that inmates have access to timely medical care, including not taking inmates to follow-up appointments and not properly evaluating their requests for accommodation or treatment. Dkt. No. 31 ¶¶ 49-51. Mr. Merino also alleges that the County failed to promulgate sufficient policies or procedures for ensuring timely medical follow-up appointments and for training or supervising staff on how to respond to written requests for medical care. *Id.* ¶¶ 49-50. Mr. Merino supports his allegations by pleading that the County was aware of ongoing problems with its grievance system and delays or denials of medical care, and that he is not the only inmate who experienced these issues. *Id.* ¶ 33.

The Court finds that these allegations are sufficient to state a claim against the County. *See, e.g.*, *Frazee v. Marin Cty. Jail*, No. 14-cv-01590-JSC, 2015 WL 1249804, at *4 (N.D. Cal. Mar. 18, 2015) (finding allegations that defendant county failed to provide proper medical care, monitoring, and treatment for severe drug withdrawal and suicidal ideations as a result of its failure to institute appropriate policies, procedures, training, and oversight to provide appropriate care for inmates with those serious medical needs sufficient to state a *Monell* claim for deliberate indifference). Accordingly, the Court denies the County's motion to dismiss Mr. Merino's deliberate indifference claim against either the Doe defendants or the County.

**B.      Claims 3 and 4: ADA and Rehabilitation Act § 504 Against the County**

Title II of the ADA prohibits public entities from both discriminating against qualified individuals because of a disability and excluding such individuals from benefitting from or participating in a public program because of their disability. 42 U.S.C. § 12132. The ADA applies to state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Similarly, the Rehabilitation Act prohibits the exclusion from participation in or the denial of benefits of a program or activity receiving federal financial assistance solely on the basis of an otherwise

13

qualified individual's disability. 29 U.S.C. § 794.

To state a claim for disability discrimination under Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion or discrimination was by reason of his disability. *Simmons*, 609 F.3d at 1021 (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice, or procedure discriminates on the basis of disability. *Weinreich v. Los Angeles County MTA*, 114 F.3d 976, 978 n.1, 979 (9th Cir. 1997) (noting that "the ADA language requiring 'reasonable accommodations' appears in Title I of the ADA and applies only to *employers*[;] [t]he language applicable to public services, benefits and programs is found in the regulations implementing Title II of the ADA," that "[t]hese regulations require 'reasonable *modifications*' to public services and programs that discriminate on the basis of disability unless such modifications would fundamentally alter the nature of the service of program") (emphases original). Section 504 of the Rehabilitation Act applies these same protections to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) ("Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act.")). Because the elements of Mr. Merino's ADA and Rehabilitation Act claims do not materially differ for the purposes of the County's motion, the Court addresses them together. *Id.* at 951.

The parties do not dispute that the County is a public entity that receives federal financial assistance, and or that it is subject to the requirements of the ADA and the Rehabilitation Act.

### 1. Qualified Individual with a Disability

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Similarly, the Rehabilitation Act defines "disability" as "a physical or mental impairment that constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(9). Mr. Merino alleges that his herniated discs caused him substantial pain, limited his movement and stability, and interfered with his ability to sleep, perform manual tasks, and work. Dkt. No. 31 ¶ 10. He further alleges that he required daily prescription narcotic medication to control his pain, as well as specialized shoes or shoe inserts to aid his functional movement and stability. *Id.* ¶¶ 10, 55. The Court finds that Mr. Merino has adequately pled that he suffers from a qualifying disability and that he was otherwise qualified to participate in or receive the benefit of the Santa Clara County Jail's services, programs, or activities, such as sleeping, eating, showering, using the toilet, exercising, safety, security, and receiving medical and dental services.

### 2. Denial of Benefits or Participation Due to Disability

The parties dispute whether Mr. Merino adequately pleads that he was excluded from participation in or denied the benefit of the County's services, programs, or activities, and if so, that he was excluded by reason of his disability. The County frames Mr. Merino's ADA and Rehabilitation Act claims as premised solely on alleged inadequate medical treatment for Mr. Merino's disability. *See* Dkt. No. 32 at 12. Mr. Merino disputes this characterization of his claims, contending that his claims are based on the County's failure to accommodate his disability. *See* Dkt. No. 33 at 18–20.

The County is correct that neither the ADA nor the Rehabilitation Act prohibit inadequate treatment of a disability. *Simmons*, 609 F.3d at 1022; *Atayde v. Napa State Hospital*, 255 F. Supp. 3d 978, 1001–02 (E.D. Cal. 2017) (collecting cases). However, Mr. Merino's claims are not limited to inadequate or negligent medical treatment for his underlying disability. He alleges that the County failed to accommodate his disability in at least three ways. First, Mr. Merino says that

15

the County failed to accommodate his movement and stability limitations when it refused to provide him special shoes or shoe inserts that would permit him to move around the facility without falling. Dkt. No. 31 ¶ 57. Second, he says that the County failed to accommodate his movement and stability limitations when it refused to allow him to sleep in a lower bunk so that he could avoid climbing and mitigate his pain. *Id.* Third, he says that the County failed to accommodate his pain-related disability by refusing to provide the pain medication Mr. Merino's doctors had prescribed for him, both for his back pain due to herniated discs and for his additional pain following facial and dental surgery. *Id.* ¶¶ 61-63.[5]

Mr. Merino has stated a claim for failure to accommodate his movement and stability limitations with respect to the County's refusal to provide special shoes and a lower bunk. Although the SAC is not particularly detailed regarding the specific services, programs, or activities he was prevented from accessing, it may reasonably be inferred from his allegations that he was restricted from accessing any service, program, or activity that required movement. *See, e.g.*, Dkt. No. 31 ¶ 14. The question of what constitutes a reasonable accommodation requires a fact-specific analysis of a disabled individual's circumstances and the accommodations that might allow him to benefit from or participate in a service, program, or activity, *McGary*, 386 F.3d at 1270, and this question cannot be resolved at the pleading stage.

Mr. Merino's allegations concerning inadequate pain medication present a closer call. On the one hand, these allegations appear to describe negligent medical treatment of the underlying disability, which is not a basis for a cognizable claim for discrimination *by reason of a disability* under the ADA or the Rehabilitation Act. He does not contend that he was denied *any* medical treatment due to his disability, but only that it was inadequate. *See, e.g.*, *Razon v. Cty. of Santa Clara*, No. 17-cv-00869-LHK, 2018 WL 405010, at *10 (N.D. Cal. Jan. 12, 2018) (complaint failed to adequately plead outright denial of medical care based on allegations of delay in provision of medication and treatment and failure to provide adequate oxygen therapy). On the

---

[5] Mr. Merino does not plead that the injuries he suffered following the attack by gang members produced new or different disabilities that the County failed to accommodate. *See* Dkt. No. 31, claims 3 and 4.

16

other hand, Mr. Merino contends that his pain-related disability and his prior treatment of it with narcotic pain medication caused him to experience more severe pain and/or withdrawal symptoms than he would have experienced had he not built up a tolerance over many years to a relatively high dose of pain medication. Dkt. No. 31 ¶¶ 10, 62, 63. In other words, by failing to accommodate his tolerance for pain medication, the County effectively failed to accommodate his disability in prescribing pain medication generally. Other courts have concluded that allegations of failure to accommodate in analogous circumstances are sufficient to state a claim for violation of the ADA and the Rehabilitation Act. *See, e.g.*, *Sexton v. Cty. of Clark Nevada*, No. 2:16-cv-02289-RFB-VCF, 2018 WL 4494091, at *8 (D. Nev. Sept. 19, 2018) ("Although Defendants medically evaluated Sexton and provided Ibuprofen for her pain, the ADA and RA may be violated if the Las Vegas Defendants failed to accommodate Sexton's alleged disabilities."); *White v. Cty. of Clark Nevada*, No. 16-cv-00734-RFB-VCF, 2017 WL 6328155, at *9–10 (D. Nev. Dec. 8, 2017) (denying motion to dismiss ADA and Rehabilitation Act claim because plaintiff adequately alleged that he did not receive medical care accommodations, including "adequate pain management" and "a lower bunk" for his disabilities, which included "neck and spinal sprain/trauma" that caused plaintiff chronic debilitating pain); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (denying defendants' motion for summary judgment because evidence corroborated plaintiff's allegation that defendants discriminated against him because of his HIV-positive status by denying him immediate access to prescribed medications, a service provided to detainees in need of prescriptions for other illnesses); *United States v. Georgia*, 546 U.S. 151, 158 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation in or denial of the benefits of the prison's services, programs, or activities.") (internal quotations and punctuation omitted).

Accordingly, the Court finds that Mr. Merino adequately pleads that defendants failed to accommodate his disability under the ADA and Rehabilitation Act by not providing him adequate pain medication, special shoes, and a lower bunk.

17

### 3. Intent to Discriminate

To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination. *Duvall*, 260 F.3d at 1138. Here, Mr. Merino must plausibly allege that in failing to accommodate his disability, the County acted with deliberate indifference. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1139.

With respect to the knowledge requirement, Mr. Merino alleges that he informed the County of his disability at the outset of his detention. Dkt. No. 31 ¶ 12. He repeatedly asked for adequate pain medication, special shoes, and a lower bunk to accommodate his disability. *Id.* ¶¶ 14-17. "When the plaintiff has alerted the public entity of his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall*, 260 F.3d at 1139. The Court concludes that Mr. Merino has sufficiently pled facts supporting the knowledge requirement for deliberate indifference.

With respect to the failure to act requirement, Mr. Merino argues that the County ignored his specific needs for pain medication in favor of a blanket policy of providing only ibuprofen to detainees. Dkt. No. 31 ¶ 13. He further contends that the County denied his requests for special shoes and a lower bunk based on a cursory examination of his walking a few steps into the examination room. *Id.* ¶¶ 16, 57, 69. An entity's failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Duvall*, 260 F.3d at 1139. "A public entity's duty on receiving a request for accommodation is well settled . . . . It is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation . . . . Mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." *Id.* (internal quotation marks and edits omitted); *see also Colwell*, 763 F.3d at 1068 (holding that a blanket, categorical denial of medically indicated treatment solely on the basis of an administrative policy constitutes deliberate indifference of a serious medical need). The Court

18

concludes that these allegations are sufficient to support Mr. Merino's contention that the County failed to engage in a fact-specific investigation to determine whether Mr. Merino's requested accommodations were reasonable.

Accordingly, the Court finds that Mr. Merino has stated claims for violation of the ADA and the Rehabilitation Act against the County.

### C. Doe Defendants

The County argues that the Court should dismiss all claims against the Doe defendants, because "Doe" pleading is improper in federal court and there is no provision in the Federal Rules of Civil Procedure permitting the use of Doe defendants. Dkt. No. 32 at 16. The County relies on authority addressing the use of sham Does to defeat diversity jurisdiction. *Id.* Those concerns are not present in this action, which is based solely on federal question jurisdiction. Dkt. No. 31 ¶¶ 5-7; *see also* Dkt. No. 33 at 23–24.

Although the use of "John Doe" to identify a defendant is generally disfavored, "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980). Mr. Merino contends that, although there are specific individuals whose conduct forms the basis of his claims, he is currently unaware of the true identities of those individuals and intends to learn their true identities through discovery. Dkt. No. 33 at 15. In these circumstances, dismissing the complaint against the Doe defendants without permitting Mr. Merino to engage in discovery to identify them first is an abuse of discretion. *See Gillespie*, 629 F.2d at 642–43.

At the hearing, Mr. Merino indicated that, if granted leave to amend, he would be able to at least identify Doe defendants by their roles or positions or specific acts, such as the doctors who examined Mr. Merino and denied his request for adequate pain medication, shoe inserts, and a lower bunk, or other individuals whose actions served as the basis of his grievances. Such amendments are warranted here, particularly given the County's objections. Accordingly, the

19

Court grants Mr. Merino leave to amend his complaint to more particularly describe the individual Doe defendants. Mr. Merino may file his third amended complaint by **June 25, 2019**.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the County's motion to dismiss.

**IT IS SO ORDERED.**

Dated: June 11, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge